VESPASIAN WARNER, Exr., Appellee, *vs.* EDWARD F. CAMPBELL, County Clerk, Appellant.

*Opinion filed February 19, 1909—Rehearing denied April 7, 1909.*

1. TAXES—*when board of review cannot assess credits.* If a property owner has not been assessed on credits at all, the board of review may in subsequent years assess credits owned by him but which were omitted; but if credits have been assessed by the assessor and the taxes extended thereon have been paid, the board of review in subsequent years has no authority to increase such assessment, either upon the theory that it was too low or that the board is assessing omitted credits.

2. SAME—*rule precluding re-assessment of credits is not limited to cases where deductions are made.* The rule precluding a board of review in subsequent years from re-assessing credits is not limited to cases where the assessor has allowed a deduction from credits, but extends to cases where no deductions existed or were claimed when the credits were assessed by the assessor.

3. SAME—*assessors may testify to explain schedules.* Where an inspection of the schedules for certain years, and of the items listed in them, tends to show that a certain item was intended to be listed as credits, testimony by the assessors who made the assessments in such years, that such item consisted of notes, mortgages and securities, is competent, as being in explanation of such schedules.

APPEAL from the Circuit Court of DeWitt county; the Hon. W. G. COCHRAN, Judge, presiding.

L. E. STONE, and E. B. MITCHELL, for appellant.

JOHN FULLER, and HUGH CREA, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellee, Vespasian Warner, executor of the last will and testament of John Warner, deceased, filed the bill in this case in the circuit court of DeWitt county against appellant, county clerk of said county, praying an injunction to restrain appellant, as such clerk, from extending on the tax books certain taxes on property of the estate of John Warner assessed by the board of review for years previous to that for which the assessment was made. The bill alleges that the board of review of DeWitt county in 1906 assessed against the estate of John Warner for back taxes $300,000 for the year 1903, with three years ten per cent penalty; $400,000 for the year 1904, with two years ten per cent penalty, and $500,000 for the year 1905, with one year ten per cent penalty. These assessments were made against credits of John Warner which the board of review determined had not been assessed in said years 1903, 1904 and 1905. The bill alleged that the said John Warner, deceased, had been assessed for those years on all of his personal property, including his credits, and that taxes had been extended on said assessments and had been paid by the said Warner, and that the back tax assessment made by the board of review was without authority and illegal and void. We deem it unnecessary to set out in further detail the further allegations of the bill or to set out the substance of the answer, as in our view of the case two questions to be determined are decisive of this case, namely: (1) Was John Warner assessed on his credits in the years 1903, 1904 and 1905? and (2) if he was, what effect must be given to said assessments? A temporary injunction was issued upon the filing of the bill, and after answer and replications were filed the case was referred to the master in chancery to take the testimony and report his conclusions of law and fact. The answer denied that John Warner was assessed on credits in the years 1903, 1904 and 1905. The assessment for each of the years mentioned made by the

board of review, as shown by the assessors' books offered in evidence, was in a column headed, "All other property not otherwise listed.—Assessed value.—Dollars," and the figures made by the board in said column for each of those years to denote the amount of property were, for 1903, 300,000; for 1904, 400,000, and for 1905, 500,000. The master found that John Warner was assessed by the township assessor on credits for the year 1903 $90,980 but was not assessed on credits for the years 1904 and 1905. He also found that the value of the property as shown by the figures made by the board of review was the cash value and not the assessed value, and he recommended that the injunction should be made perpetual as to the assessment for the year 1903, and that as to the assessments for the year 1904 appellant should be enjoined from extending the taxes on a valuation of more than $80,000, or one-fifth of the cash value of the property assessed as fixed by the board of review, and that he be enjoined from extending the taxes on the property assessed for the year 1905 on a greater sum than $100,000, which was one-fifth of the cash value of the property assessed that year, and that as against extending taxes on said sums of $80,000 and $100,000 for the years 1904 and 1905 the injunction should be dissolved. He also recommended that appellant be enjoined from adding a penalty to the taxes extended. Objections were filed before the master to his report by both parties. They were overruled by him and renewed as exceptions in the circuit court. The court found that in each of the years 1903, 1904 and 1905 said John Warner had listed his personal property, including credits, and delivered schedules thereof in each of said years to the assessor; that in each of said years said assessors had fixed and determined the fair cash value on all of the personal property of the said John Warner, including credits, and that taxes were extended on said assessment and were paid, and a decree in accordance with such findings was entered perpetually enjoining appellant from ex-

tending any taxes against the assessment and valuation of the board of review for said years 1903, 1904 and 1905. The appellant prosecutes this appeal, and contends (1) that John Warner was not in the years 1903, 1904 and 1905 assessed on credits; and (2) that if he was assessed on credits in those years the proof shows he was not assessed on all the credits owned by him in those years, and that the board of review had authority, upon ascertaining that fact, to assess credits that had been omitted.

The schedule made by Warner in the year 1903, in the column headed "Full value (as determined by assessor,)" contained the figures 90,980. Said figures are opposite the printed line of schedule numbered 38, which reads, "All other personal property required to be listed," but immediately above the line is written "Notes, etc." Taken in connection with the other items listed in said schedule, we think it reasonably clear that the "90,980" was intended to, and did, represent credits. In the "full value" column of the schedule made by John Warner in 1904, opposite line 26, which reads, "Moneys of other than bank, banker, broker or stock jobber," are the figures 83,000. This item was placed on the assessor's book in a column headed with the same words. Adam Klarr, who was assessor in the year 1904, testified he assessed John Warner's personal property and remembered about the item of $83,000; that said Warner gave in notes to the amount of $70,000 and moneys to the amount of $13,000, and that the two were added together and the sum listed in the schedule as $83,000, and that this was due to the ignorance of the witness. In the schedule for 1905, in the "full value" column and opposite line 26, are the figures 65,000. Joseph E. Johnson testified that he was assessor that year and assessed the personal property of John Warner; that he had with him at the time the previous year's schedule of said Warner, and that Warner said some of his mortgages had been paid off and released and he would have to look up the records before

making his schedule; that he did not have as much on hand then as he had the previous year. The witness understood the 65,000 represented mortgages and securities. The testimony of these assessors was objected to by appellant as incompetent.

We are of opinion this testimony was competent, not for the purpose of contradicting the schedules but as explanatory of them. In *Keokuk Bridge Co.* v. *People,* 161 Ill. 132, it was contended by the bridge company that the Illinois assessor had assessed as in Illinois a part of the bridge that was in the State of Iowa. The description of the part of the bridge assessed as made by the assessor was such that it could not be determined whether this contention was true or not, and it was held that oral testimony was competent to explain it. The court said (p. 139): "The question presented is not one of revising the assessment made by the officer designated by law for the performance of the duty of assessing, but it is a question of the identification of the property that was assessed." An inspection of the schedules and of the items of property listed in them tends to show that the items mentioned above were, in fact, intended to be listed as credits, and we do not think the court erred in admitting this testimony. It therefore appears that John Warner was assessed on credits in each of the years 1903, 1904 and 1905.

The proof shows that John Warner owned credits in each of those years to a much larger amount than he was assessed for, and appellant contends that the board of review had authority to assess his estate on the credits he owned in excess of the amount listed in his schedules. This contention has been decided adversely in previous decisions of this court to appellant. Those decisions hold that when credits have been assessed and taxes extended upon the assessment and paid by the tax-payer, the board of review in subsequent years has no authority to increase such assessment upon the theory that the assessment was too low or

that the board is assessing omitted credits. (*Barkley* v. *Dale*, 213 Ill. 614; *Sellars* v. *Barrett*, 185 id. 466; *People* v. *Sellars*, 179 id. 170; *Allwood* v. *Cowen*, 111 id. 481.) In those cases it was held that the assessor is required, in determining the value of property assessed, to exercise his judgment, and that his acts are in the nature of judicial acts and not subject to review by his successor or the board of review for errors of judgment. Appellant insists that this rule applies only where deductions are made from credits. In some of the cases the subject of deductions is discussed in connection with the assessment of credits, but an examination of the cases will disclose that no distinction is made as to the effect of the assessment between cases where deductions are allowed and cases where none exist nor are asked. The principle upon which these decisions are based is, that credits are not assessed and valued in separate items, like horses, cattle, hogs, wagons, etc., but the value of all credits is to be determined and assessed as one item, and where this is done the effect is the same as is the assessment of a horse, a cow or a wagon. In a case where a deduction is to be made from credits the assessor must first determine the value of the credits, and the fact that after determining such value he determines the amount of deductions to be made makes the act no more judicial than it would have been if there had been no deductions to be made. Except for fraud when the assessment is made, the taxes extended and paid upon said assessment are binding in subsequent years upon the board of review. Mere mistakes of the assessor or errors of judgment will not invalidate the assessment. Where a property owner has not been assessed on credits at all, the board of review may in subsequent years assess credits the party owned but which were omitted from the assessment.

We are of opinion the decree of the circuit court was warranted by the law, and it is affirmed.

*Decree affirmed.*