THE PEOPLE *ex rel.* Frank W. Jones, Appellant, *vs.* THOMAS J. WEBB *et al.* Appellees.

*Opinion filed December 17, 1912.*

1. APPEALS AND ERRORS—*when revenue is involved.* A *mandamus* proceeding to compel the board of review to list for taxation certain property alleged to have been omitted in former years is an action which directly involves the revenue, and, under section 118 of the Practice act, an appeal from a judgment dismissing the petition, and for costs, lies to the Supreme Court. (*Reed* v. *Village of Chatsworth,* 201 Ill. 480, and *Chicago* v. *Cook County,* 224 id. 246, distinguished.)

2. MANDAMUS—*writ of mandamus is a summary writ.* The writ of *mandamus* is a summary writ issuing from a court of competent jurisdiction, commanding the officer or body to whom it is addressed to perform some specific duty which the relator is entitled, of right, to have performed, and it only issues when the party to whom it is directed is in default in the performance of some act which he has the power and authority to do.

3. SAME—*rule as to mandamus issuing to compel performance of discretionary duty.* *Mandamus* will not issue to compel action in matters about which an officer has a discretion as to whether he will or will not act, but it may issue for the purpose of compelling action one way or the other in a matter in which the officer must act but has a discretion as to which way he will act.

4. SAME—*rule as to mandamus to compel action by judicial officer.* A judicial officer, or one exercising discretion or authority,

may be compelled to act and to proceed to the performance of a duty enjoined upon him by law, but he cannot be controlled in his judgment or compelled to exercise discretion in a particular way.

5. SAME—*extent to which action of assessing officers may be compelled.* Officers whose duty it is to value and assess property for taxation may be compelled by *mandamus* to proceed in the discharge of their duties and make an assessment, but the court will not undertake to give directions as to the valuation to be placed upon the property to be assessed unless the valuation is so low as to show that the assessing officer is making a fraudulent under-valuation.

6. SAME—*it is not necessary the petitioner be entitled to every detail of relief asked for.* The object of a petition for *mandamus* is to require the inactive or neglectful officer to discharge his duty, and it is not necessary to the allowance of the writ that the petitioner be entitled to compel the performance of every detail of the neglected duty that is set out in the petition, as the court is not obliged to grant the prayer of the petition in its entirety, but only so much as the petitioner is shown to be entitled to.

7. SAME—*mandamus will lie to compel the board of review to list and assess omitted property.* Mandamus will lie to compel the board of review to list and assess for taxation property which has been omitted from assessment in former years by the assessor or board of assessors, where such omission has been specifically called to the attention of the board and demand has been made upon it, which it has, in effect, ignored.

8. SAME—*owners of alleged omitted property are not necessary parties to mandamus suit against board of review.* The owners of the stocks and bonds alleged in a petition for *mandamus* to have been entirely omitted in former years are not necessary parties to the suit, which is to compel the listing and assessment of the property by the board of review, as their rights are protected by the fact that they are entitled to a notice and a hearing before the board of review when that body proceeds to act.

9. SAME—*the fact that omitted property is owned by different persons does not require separate petitions.* The fact that stocks and bonds omitted from assessment in previous years are owned by many different persons does not require separate petitions against the board of review as to each owner, as the duty of the board to assess all omitted property is but one duty, and it is proper for the petitioner to embrace all the property in one petition.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding.

WILLIAM CAPESIUS, and HENRY M. ASHTON, for appellant.

D. W. SULLIVAN, and RALPH M. SHAW, (JOHN BARTON PAYNE, of counsel,) for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This was a petition for *mandamus* on the relation of Frank W. Jones, a resident and tax-payer of the city of Chicago, against Roy O. West, Fred W. Upham and Thomas J. Webb, composing the board of review of Cook county, to compel said board of review to list for taxation certain omitted personal property for the years 1905, 1906, 1907, 1908, 1909 and 1910. Certain persons residing in Cook county were named in the petition as owners of the several items of property which it was sought to have the board of review assess. Upon application for that purpose the court permitted certain of the alleged owners of the omitted property to be made defendants. Subsequently, over the objection of said defendants, the court set aside the order allowing the property owners to be made parties defendant. The action of the court in this regard was excepted to by the defendants below, and the ruling is preserved for review by cross-error assigned by appellees. Defendants below made a motion to expunge certain portions of the fourth amended petition from the record, and that motion was sustained. Defendants below demurred to the petition and their demurrer was sustained. The petitioner elected to stand by the fourth amended petition, whereupon a judgment was rendered dismissing it and against petitioner for costs. Petitioner has prosecuted an appeal to this court.

Appellees have entered a motion to dismiss this appeal for want of jurisdiction, and argue in support of the said motion that this is not a case relating to revenue. This motion cannot be sustained. Section 118 of the Practice

act authorizes a direct appeal to this court in "all cases relating to revenue, or in which the State is interested, as a party or otherwise." The assessment of property is the basis upon which all the revenue is collected. Any action brought for the purpose of increasing or diminishing the assessed value of taxable property relates to the revenue. Cases like *Reed* v. *Village of Chatsworth,* 201 Ill. 480, and *City of Chicago* v. *Cook County,* 224 id. 246, and other cases in line with them in which the controversy was between different claimants to a public fund paid by tax-payers, are not in conflict with the views herein expressed. In that class of cases it has been said,—and such is the rule,—that to give this court jurisdiction of a direct appeal the revenue must be directly involved and not merely incidentally. In the case at bar the revenue will be increased or diminished as a result of the suit and is directly involved. Cases of this character have always been regarded as relating to the revenue and appealable direct to this court. *People* v. *Sellars,* 179 Ill. 170; *State Board of Equalization* v. *People,* 191 id. 528.

In order to determine whether the court erred in sustaining the demurrer it will be necessary to set out the substance of the petition, and especially those averments which are most seriously challenged as being insufficient.

The petition alleges that Frank W. Jones, the petitioner, is a resident and tax-payer of Chicago, Cook county, Illinois, and that appellees compose the board of review of said county and are acting as such board; that the board of assessors of Cook county and the board of review have failed to list for taxation and have wholly omitted from assessment personal property subject to assessment and within the jurisdiction of the board of assessors and the board of review, owned and held by residents of Cook county on the first day of April for each of the years from 1905 to and including 1910; that the board of review is charged by law with the duty of valuing and assessing all

property within the county subject to taxation and within the jurisdiction of said board not assessed by the board of assessors or by the board of review in former years. The petition alleges that J. Ogden Armour and sixty-five other persons, all of whom are named, were on the first day of April, 1910, residents of Cook county, and that each of said persons named was on the first day of April in each of the years 1905, 1906, 1907, 1908, 1909 and 1910 a resident of said Cook county; that each of said persons owned, respectively, on the first day of April, 1910, property consisting of shares of stock in companies or organizations not organized under the laws of the State of Illinois, as follows. Following this averment is a list of stocks which is called "Table A," at the head of which appears the name of J. Ogden Armour, preceded by the words, "Property of." In table A, under the name of J. Ogden Armour, is a list of stocks, the first item of which is, "30,000 shares of preferred stock of the Kansas City Railway and Electric Light Company, a New Jersey corporation, par value $100, actual value $3,000,000." This is followed by other similar statements giving the number of shares of stocks or bonds alleged to belong to J. Ogden Armour and alleging the actual value thereof. The total amount of stocks and bonds thus listed as belonging to J. Ogden Armour is over $30,000,000. This is followed by a similar list under the several names of the sixty-five other property owners who, it is alleged, own the several items of stocks and bonds listed in table A under their respective names. The aggregate actual value of the stocks and bonds alleged to have escaped assessment is approximately $168,000,000. The petition avers that each of the individuals named owned the same number of shares of stock in the corporations named, on the first day of April of each of the years from 1905 to and including 1910, and that none of said property owners listed or scheduled any of said shares of stock for taxation for any of the years

named and that the said stocks and bonds have entirely escaped taxation for the said several years, whereby the petitioner and the other tax-payers of Cook county have suffered loss and increased burdens to their property by reason of such failure to list said stocks for taxation. It is averred that it was the duty of the board of assessors to assess the said property after the failure of the owners thereof to list the same, and to add the penalties provided by law to such assessment. The petition alleges that said property owners having failed to list said property and the board of assessors having failed and neglected to assess the same, it becomes the duty of appellees, as the board of review, to assess the same as provided by the statute, alleging full power and jurisdiction of appellees for such purpose.

The petition further alleges that on July 26, 1910, the petitioner informed the board of review, and each of the members thereof, of all the facts set forth in table A, and filed with the board, and each member thereof, a notice and a demand in writing setting forth the facts stated in table A, and advising said board that the property therein referred to had been wholly omitted from taxation for all of the years named, and advising and informing the said board of review that the persons named in said table A each owned the property listed under his name on the first day of April in each of the years stated. A copy of the notice served upon the appellees in reference to the stocks owned by Adam Kreuter, who resides at 2302 North Kedzie boulevard, in Chicago, Cook county, Illinois, is set out in the petition. This notice shows that said Adam Kreuter owned 6500 shares of the capital stock of the American Laundry Machine Company, an Ohio corporation, of the par value of $100 and of the aggregate value of $650,000, and alleges that none of said property had been assessed for any of the years stated. Said written notice demanded that the board of review proceed to assess such omitted

property as was owned by Kreuter for the several years designated, and that Kreuter be notified of the filing of the complaint and given an opportunity to show cause why he should not be assessed for the amounts of the several items of property stated. The petition further shows that a like notice and demand were served upon said board as to each of the other persons named in said table A, and that each of said notices was, in substance, the same as the one set out in the petition, the variation being in respect of the names of the persons complained against and the several items of stocks and bonds alleged to have been owned by each, respectively. The petition alleges that a few days after the notices and demand were delivered to the board the said board notified each of the individuals named in said table A that such complaint and demand had been filed, and each of the persons named in table A was requested to appear before the said board and answer the complaint. The petition alleges that Adam Kreuter was the only one of the sixty-six property owners who appeared and answered said petition; that said Kreuter appeared before the board on the 24th day of August, 1910, and admitted that he owned in 1908, 1909 and 1910 stock in the American Laundry Machine Company, an Ohio corporation, of the value of $141,000. The petition avers that the board of review refused to assess said Kreuter on said property at the valuation stated by said Kreuter before said board, but that the board willfully, knowingly, unlawfully and fraudulently, and in violation of its positive duty, fixed and determined the value of said property of said Kreuter for the year 1910 at the sum of $33,000 full cash value. It is averred that the said valuation did not represent the honest judgment and discretion of said board, but was the result of a gross abuse of such discretion and a disregard of the duty of said board in the premises. It is alleged in the petition that notwithstanding said Adam Kreuter admitted the ownership of stock

in a foreign corporation of the value of $141,000 and that the same had not been listed for taxes in 1908, 1909 and 1910, still said board, in violation of its duty, then and there fraudulently made an assessment against Kreuter for the year 1908 on a valuation of $6700 and for the year 1909 of $11,167, and then fraudulently entered an order canceling these assessments for the years 1908 and 1909, so that, in fact, said Kreuter paid no taxes whatever on any of said property for the years 1908 and 1909. The petition alleges that the relator offered to furnish the said board with information and evidence to prove the facts alleged in table A as to the amount of property owned by each person named therein, but that said board refused to consider such information and proof so offered and then and there refused to assess said persons, or any of the property owned by said persons, respectively, as set forth in said table A.

Paragraphs 18, 19 and 20 of the petition, together with the figures and words stating the par value and the actual value of the several items of stock listed in table A, were, on motion of appellees, stricken out of the petition. This action of the court is assigned as error, but no bill of exceptions was preserved to the order expunging these matters from the petition, and the question raised upon this point is not properly before us.

It is further averred in the petition that among other persons named in the original petition as owning property that had been omitted from taxation, Thomas E. Wells was alleged to have owned property to the amount of $450,000 which had been omitted from taxation for all of the years heretofore named; that said property consisted of 4500 shares of the capital stock of the Quaker Oats Company, a New Jersey corporation; that said board refused to assess any of the said property against Wells for any of the years complained of. It is alleged that since the filing of the original petition Wells died; that his will had been ad-

mitted to probate in Cook county, and that an appraisement of the property of his estate showed that he had personal property, consisting of stocks and bonds owned by said Wells during his lifetime, of the value of $2,236,712, and that more than $1,500,000 consisted of stock in companies and associations organized in foreign States, and that the evidence taken before the inheritance tax commissioner disclosed the fact that the said Wells had owned said stock in foreign corporations for more than five years prior to 1910. The petition alleges that upon these facts the relator requested the board to make an assessment against the estate of Thomas E. Wells for the years from 1905 to 1910, inclusive, and that appellees refused, willfully and fraudulently, to make such assessment. The petition alleges that the said board of review was in session and had full power and jurisdiction to assess the several items of property as omitted property mentioned in table A for the years for which the same had been omitted; that evidence was submitted before said board showing the omission to assess said property, and that said board refused and neglected to assess any of said persons upon any of said property, whereby the petitioner and the other tax-payers of Cook county had suffered loss and increased burdens of taxation upon their property. It is alleged that said board adjourned its meeting without having discharged its duty in regard to making the assessments as stated in the petition, by reason whereof all of the persons named in said table A have escaped the payment of any taxes upon said property, and escaped and avoided, in addition thereto, the penalties provided by law, and also the payment of back penalties and back taxes for the years named prior to 1910. The prayer of the petition is that due process issue, and that a writ of *mandamus* be awarded against the board of review of Cook county, and against the persons now composing said board, commanding them forthwith to assess the individuals named in said table A on the fair cash

value of the shares of stock owned by them in companies and associations not organized under the laws of the State of Illinois for the years from 1905 to and including 1910, and that such further orders may be made in the premises as justice may require.

Appellees seek to sustain the action of the court in holding the petition insufficient and dismissing the same upon several grounds, and have filed an elaborate brief and argument in support of their several contentions. If the petition is insufficient in any material respect, it follows that the judgment below is right and must be affirmed.

The writ of *mandamus* is a summary writ issuing from a court of competent jurisdiction, commanding the officer or body to whom it is addressed to perform some specific duty which the relator is entitled, of right, to have performed. It only issues when the party to whom it is directed is in default in the performance of some act which he has the power and authority to do. *Mandamus* does not create the duty or confer the power to perform it, but is designed to coerce action along the lines marked out by the law for the person against whom it is directed. It does not issue to compel action in matters about which the officer has a discretion as to whether he will act or not, but it may issue for the purpose of compelling action one way or the other in a matter in which the officer has a discretion as to which way he will act. It is sometimes said that the writ will not issue to compel the performance of a judicial duty. This statement is not quite accurate. A judicial duty may be enforced where the right is clear and the judicial officer, if he obey the law, has no discretion but must do a particular thing which the law requires of him. A better statement of the law seems to be, that while a judicial officer, or one exercising discretion or authority, may be compelled to act and to proceed to the performance of his duty, he cannot be controlled in his judgment or compelled to exercise his discretion in a particular manner

by means of this writ. (Cooley on Taxation, p. 1352, and cases there cited.) Applying these general principles, the law is well settled that where assessing officers fail and neglect in the performance of their duty they may be compelled to act, but where it is necessary to exercise judgment and discretion as to valuations and the like, the court will not decide such questions for the officers and direct by *mandamus* what the judgment is or should be. In other words, officers whose duty it is to value and assess property may be compelled by *mandamus* to proceed in the discharge of their duties and make an assessment, but the court would not undertake to give directions as to the valuation that ought to be placed upon the property to be assessed, unless the valuation was so low as to show that the assessing officer was making a fraudulent undervaluation. This court, in *State Board of Equalization* v. *People, supra,* held that where the State Board of Equalization arbitrarily fixed values upon the capital stock and franchises of certain corporations at such an inadequate amount, it was evidence of a fraudulent purpose on the part of the board to evade the discharge of its duties, and awarded a *mandamus* requiring a re-assessment at a fair valuation. In addition to the case above cited, which is commonly known as the "teachers' case," many other authorities sustain the power of the court, in a proper case, to compel assessing officers to proceed and discharge their duties in making a fair assessment of property. The case of *People* v. *Sellars, supra,* was *mandamus* to compel the county clerk to extend taxes that were in arrears for a number of years against certain property. In that case the assessor had returned the assessment to the clerk but the clerk refused to extend the taxes. While a judgment sustaining the demurrer to the petition was affirmed by this court it was not suggested that *mandamus* was not a proper remedy. See, also, *Loewenthal* v. *People,* 192 Ill. 222.

Was it the legal duty of appellees to assess the persons named in table A upon the fair cash value of the property therein alleged to belong to them, or such portion thereof as might appear to be liable to assessment? Section 1 of article 9 of the constitution of 1870 provides that "the General Assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property—such value to be ascertained by some person or persons to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise." Paragraph 6 of the Revenue act provides that "every person of full age and sound mind, being a resident of this State, shall list all his moneys, credits, bonds or stocks, shares of stock of joint stock or other companies, (when the capital stock of such company is not assessed in this State,) moneys loaned or invested annuities, franchises, royalties, and other personal property." Paragraph 25 of the Revenue law prescribes the form of the schedule, and provides that the schedule, when completed by the assessor, shall truly and distinctly set forth certain facts. The 29th clause of the schedule is as follows: "The amount and value of shares of capital stock of companies and associations not incorporated by the laws of this State," and the 31st clause requires "the value of property of companies and corporations other than property hereinbefore enumerated" to be stated. Paragraph 276 of the Revenue law provides that "if any real or personal property shall be omitted in the assessment of any year or number of years, or the tax thereon, for which such property was liable, from any cause has not been paid, or if any such property, by reason of defective description or assessment thereof, shall fail to pay taxes for any year or years, in either case the same, when discovered, shall be listed and assessed by the assessor and placed on the assessment and tax books. The arrearages of tax which might

have been assessed, with ten per cent interest thereon, from the time the same ought to have been paid, shall be charged against such property by the county clerk." Paragraph 297 of the Revenue law provides for the election and organization of a board of assessors in counties which contain a population of more than 125,000, and subsequent sections provide for the assessment of property, both real and personal, under the direction of the board of assessors. Paragraph 309 requires that personal property shall be valued in a manner required by law, and shall be listed between the first day of April and the first day of June of each year, with reference to the quantity owned on the first day of April in the year for which the property is required to be listed. Paragraph 326 provides for the election of three persons in counties of 125,000 inhabitants, who shall constitute the board of review, and the next paragraph prescribes a form of oath required of each member of the board of review, one clause of which is, that "I will do and perform all acts necessary to procure a full, fair and impartial assessment of all property of every kind, nature and description." Paragraph 328 provides for the meetings of the board of review, and paragraph 329 defines their duties, the first of which is, to "assess all property subject to assessment which shall not have been assessed by the assessors, and the board may make such alterations in the description of real or personal property as it shall deem necessary."

The Revenue act of 1898 took away from the local assessor the power to assess omitted property and vested that power in the board of review. (*State Board of Equalization* v. *People, supra.*) This court held in *Stevens* v. *Henry County,* 218 Ill. 468, that since the passage of the Revenue act of 1898 the board of review is the only body that has power to assess property omitted in former years, and that it is the duty of the board of review to "assess all property subject to assessment which shall not have

been assessed by the assessors." In *Warner* v. *Campbell*, 238 Ill. 630, the power of the board of review to assess, in subsequent years, credits which had been omitted was upheld. In the late case of *People* v. *Shirk*, 252 Ill. 95, this court held that under section 329 of the Revenue act the board of review had the power to make an original assessment of omitted property in the same manner, and subject to the same requirements as to notice, that the assessor might make under sections 276 and 278, and that the statute authorizing the board of review to assess omitted property was a valid constitutional enactment. In *People* v. *Commissioners of Cook County*, 176 Ill. 576, it was held that where the board of review refuses to act, or acts in a manner showing an abuse of discretion and a clear attempt to evade the performance of a positive duty, it amounts to a virtual refusal to perform the duty, and *mandamus* will lie to compel the board to act in the premises. The same doctrine was announced in its application to the State Board of Equalization, in *State Board of Equalization* v. *People, supra.* See, also, *Loewenthal* v. *People, supra.*

If the allegations in this petition are true,—and for the purposes of the decision of the questions now before us they are admitted to be true,—we are at a loss to find any possible excuse for the refusal of appellees to proceed to an investigation and to determine whether the facts stated in the petition are true, and if they be found to be true, in whole or in part, to assess the persons named in the petition upon the fair cash value of their property which has been·omitted from assessment for any of the years named in the petition.

Appellees contend that the property owners named in the petition should have been made parties, and the action of the court in dismissing them out of court is assigned as a cross-error. We are of the opinion that the property owners are not necessary or proper parties to this *man-*

*damus* proceeding. The *mandamus,* if awarded, will not conclude the property owners upon any question affecting their rights. They will have an opportunity to appear before the board of review when notified and show any cause they may have why the alleged omitted property should not be assessed to them. They have no interest, other than their general interest as citizens and tax-payers, in this proceeding. In *State* v. *Osborn,* 60 Neb. 415, the Supreme Court of that State held that in a proceeding to compel an assessor to assess property at its true cash value it is unnecessary to bring in any tax-payer of the taxing district as a necessary party. Section 7 of our statute on *mandamus,* which provides for the bringing in of any person who may appear to the court to have or claim any right or interest in the subject matter, as construed by this court in *Winstanley* v. *People,* 92 Ill. 402, means only that persons should be brought in who might have been properly joined as defendants in the first instance and against whom the writ might properly issue. The property owners will be wholly unaffected by any judgment that may be finally rendered in this case. If the *mandamus* is awarded, it is true, they will be notified to appear, and will have the right to appear before the board of review and show any cause they may have why the assessment should not be made. But whatever may be required of the property owners in this regard will not be by virtue of the *mandamus,* but it will be by reason of the notice that is given by the board of review, which will enable them to avail themselves of a hearing, if they so desire. The status of the property owners will not be any different than if the board of review had sent out its notices and entered upon an investigation before the petition for *mandamus* was filed. If they were brought into court we do not see what defense they could make for the board of review. Clearly, the court would not enter upon a hearing to determine the amount and value of the omitted property that might be

owned by the several persons named. That is the province of the board of review, and it is the discharge of its duty in that regard that is sought to be coerced by *mandamus*.

Appellees strenuously contend that the prayer of the petition is too general in form and does not follow the allegations of the petition. It appears to be assumed by appellees that the court is compelled to award a *mandamus* to compel the performance of the exact duties mentioned in the prayer. We do not so understand the law. The object of the *mandamus* is to stir up the inactive or neglectful officer to the discharge of his duty. It is not necessary that the petitioner should be entitled to a *mandamus* to compel the performance of every detail of the neglected duty that is set out in the petition. If the petition shows enough to entitle the relator to the writ and to some of the relief that is prayed for, it is not vulnerable to a general demurrer. This court, in *Commissioners of Highways* v. *Jackson*, 165 Ill. 17, held that the court is not obliged to grant the prayer of the petition in its entirety, but only so much as the relator is shown to be entitled to. The petition in the case at bar follows almost the exact language of the prayer of the petition in *State Board of Equalization* v. *People, supra.* Under the facts admitted by the demurrer, appellant is entitled to a writ of *mandamus* commanding the board of review to proceed in the regular statutory method to assess as omitted property such portion of the stocks and bonds as may be found, upon investigation, to have escaped taxation for any of the years named in the petition.

Appellees suggest that this suit should be split up into as many different petitions as there are persons named in table A. It is argued that the duty to assess omitted property belonging to one person constitutes one cause of action and the duty to assess the omitted property of another is a different and separate cause of action, and that one petition and one writ of *mandamus* cannot be employed

for more than one tax-payer. This position cannot be sustained. Its only effect would be to require a multiplicity of suits where one will answer as well as any number. While it is true that from the standpoint of the property owner his obligation to properly list his property and to pay his just share of the taxes is personal and several, so far as appellees are concerned they owe one duty, created by law, to assess all persons whose property for any reason has escaped assessment by the assessor, and it is this duty that is sought to be coerced by the *mandamus,* and it is a continuing duty as long as there are any persons liable to assessment by them under the law. It is immaterial whether the discharge of this duty requires appellees to assess one or one hundred persons,—it is still but one general legal duty resting upon them. Suppose a tax collector refuses to proceed to collect public revenue of the county without any justification therefor; would it be contended that it would be necessary to file one petition for *mandamus* to compel him to proceed to collect taxes of A, another petition to compel him to collect taxes of B, and so on, with as many different petitions as there were tax-payers in his county or district? Such a rule would, it seems to us, be a reproach to the judicial procedure of the State. There is no merit in this contention of appellees.

The court below erred in sustaining the demurrer to and dismissing the petition. The judgment of the circuit court of Cook county is reversed and the cause remanded, with directions to the court to overrule the demurrer and to require appellees to answer the petition if they desire to do so, and for further proceedings in accordance with the views herein expressed.

*Reversed and remanded, with directions.*