George A. Hutchinson, Appellee, v. John J. Garrity, General Superintendent of Police of City of Chicago, Appellant.

Gen. No. 25,094.

THEATERS AND SHOWS, § 3*—*when refusal to permit exhibition of moving picture will be sustained.* On appeal from a judgment, rendered upon the verdict of a jury, ordering the issuance of a peremptory mandamus commanding the superintendent of police of the City of Chicago to grant petitioner a permit to exhibit publicly a certain moving pcture, *held*, after viewing the picture which was shown on a screen by the use of the films thereof filed as exhibits below which had been transmitted to the Appellate Court, that the finding that the defendant did not exercise his official discretion honestly and fairly in refusing the permit and that there was no reasonable basis for the censor's judgment against the granting of the permit, was not supported by the evidence, and it was found that certain scenes therein were immoral and of an immoral nature and such as would tend to produce a harmful influence upon the minds of children.

Appeal from the Superior Court of Cook county; the Hon. JOSEPH H. FITCH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919. Reversed with finding of facts. Opinion filed April 30, 1920.

Statement by the Court. This is an appeal from a judgment of the superior court of Cook county, rendered January 18, 1919, upon the verdict of a jury, ordering the issuance of a peremptory writ of mandamus, commanding John J. Garrity, General Superintendent of Police of the City of Chicago, to grant to

. *See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.
Vol. CCXVIII 11

the petitioner, George A. Hutchinson, a permit to publicly exhibit within said city the moving picture or photoplay "Protect Your Daughters," upon the payment of the usual fee required for similar permits.

In the petition for the writ, filed June 7, 1917, it is alleged, in substance, that petitioner is the owner of and controls certain pictures which are commonly exhibited to the public by means of automatic or moving picture devices, in theaters and places of amusement in the City of Chicago; that in particular he is the owner (to the extent of the right and interest to publicly display the same in said city and derive all proceeds therefrom) of a certain photoplay, known as "Protect Your Daughters"; that on or about June 2, 1917, he applied to the then general superintendent of police of said city, Herman L. Schuettler, and to the then second deputy superintendent of police, M. L. C. Funkhouser, as provided by law, for a written permit to publicly exhibit said photoplay in said city, and in obedience to the provisions of certain ordinances of said city submitted said photoplay to said Schuettler and Funkhouser, the duly constituted moving picture censor authorities, and the same was then and there exhibited to said Funkhouser, and on the same day he tendered the required permit fee; that said Schuettler and Funkhouser refused to accept the permit fee, and refused, and still refuse, to issue to petitioner a written permit to publicly exhibit said photoplay in said city; and that said photoplay "was and is not immoral or obscene, and did not, nor does it have a tendency to disturb the public peace, nor was it nor is it indecent or a lewd picture, or a picture of an immoral or scandalous nature, nor did it represent nor does it represent a person in a nude state, nor is it nor was it an indecent, immoral or lewd play or other representation." Certain ordinances of the City of Chicago were attached to the petition as exhibits and made a part thereof.

A general demurrer to the petition was overruled by the court and subsequently Schuettler filed an answer to the petition in which he alleged, *inter alia*, that "said picture is immoral and obscene  *  *  * and is indecent and lewd and of an immoral and scandalous nature." Subsequently John J. Garrity was substituted as party defendant in place of Herman L. Schuettler.

At the commencement of the trial, January 2, 1919, it was admitted by the attorney for the respondent that there was an ordinance of said city in force and effect at the time of the application for said permit by which the second deputy superintendent of police was charged with the duty of censoring motion pictures, and that said official then had deputies or assistants to aid him in such work; that the motion picture, known as "Protect Your Daughters," was presented to the general superintendent of police in proper manner and a permit asked for; that the picture was taken to the projecting room of said second deputy superintendent as the ordinance provides, that the same was there exhibited and officially censored and that a permit was refused. Thereupon the court and jury and respective counsel of the parties retired to said projecting room, where said picture was exhibited and viewed by the court and jury. After the return to the court room the attorney for petitioner introduced in evidence the several ordinances referred to in the petition. Sections 1627 and 2024, as amended, of the Chicago Code of 1911 provide:

"1627. If a picture or a series of pictures, for the showing or exhibition of which an application for a permit is made, is immoral or obscene, or portrays any riotous, disorderly or other unlawful scene, or has a tendency to disturb the public peace, it shall be the duty of the general superintendent of police to refuse such permit; otherwise it shall be his duty to grant such permit."

"2024. It shall be unlawful for any person to exhibit, sell or offer to sell or circulate or distribute any indecent or lewd book, picture or other thing whatever of an immoral or scandalous nature, or to exhibit, in any place where the same can be seen from the public highway or in a public place frequented by children which is not connected with any art or educational exhibition, any picture representing a person in a nude state, or to exhibit or perform any indecent, immoral or lewd play or other representation, under a penalty of not less than twenty (20) dollars nor more than one hundred (100) dollars for each offense."

Amended ordinance, passed by City Council, July 2, 1914:

"Section 1. That in all cases where a permit for the exhibition of a picture or a series of pictures has been refused under the provisions of Section 1627 * * * because the same tends towards creating a harmful impression on the minds of children where such tendency as to the minds of adults would not exist if exhibited to persons of mature age, the general superintendent of police may grant a special permit limiting the exhibition of such pictures or series of pictures to persons over the age of 21 years; * * *."

George A. Hutchinson, the petitioner, testified that Funkhouser told him that the reason the permit was not granted was that the picture was a "white slave" picture. Mrs. Stuart, a member of the board of censors, testified that Funkhouser's general instructions to the board of censors had been that "white slave pictures" should be rejected, and that "pictures relating to white slavery, immoral pictures, black-mailing pictures, opium den pictures or smuggling pictures were not to be passed." At the conclusion of petitioner's case the defendant moved that the court instruct the jury to find the issues for the defendant, but the motion was denied.

On behalf of the defendant, Funkhouser testified

in substance that he had reviewed the photoplay in question in his official capacity; that he refused to give a permit for the same because "it was immoral"; that in his office in the City Hall he had a conversation with the petitioner; that petitioner wanted to know why the photoplay had been rejected; that he told petitioner that it "was immoral," and that it "was contrary to the State law and city ordinances"; that he described to petitioner certain scenes in the play which in his opinion were immoral; that there were scenes in the play which showed "a house of prostitution," and "a girl in the back room of a saloon or dance hall," and another scene where some one "was using a needle in a girl's arm in a railway station"; and that "those are all crimes themselves and if they are crimes they are immoral."

At the conclusion of all the evidence the defendant renewed his motion for an instructed verdict but the motion was denied. On January 3, 1919, the jury returned a verdict finding the issues for the petitioner, and they also returned their special findings, upon questions submitted to them by the court, as follows:

"Did the defendant, at the time he refused a permit for the picture in question, exercise his official discretion honestly and fairly? Answer—No."

"Was there a reasonable basis for the censor's opinion or judgment in refusing a permit for the motion picture in question, after the same had been exhibited to him upon the screen? Answer—No."

On the same day, by agreement of counsel the court entered an order that "petitioner's original exhibits consisting of five reels of films, introduced in evidence, * * * enclosed in a metal box and marked petitioner's exhibits 1, 2, 3, 4 and 5, be filed with the clerk to be by him certified and transmitted to the Appellate Court for inspection, * * * an inspection of said exhibits * * * being necessary, in the opinion of the court, to a correct decision in the case." The said

exhibits were certified and transmitted to the clerk of this court, and the respective counsel here stipulated that said exhibits are in the same condition as when thrown upon the screen before the court and jury in the trial court.

SAMUEL A. ETTELSON, for appellant; MORTON S. CRESSY and ADOLPH RADNITZER, of counsel.

TRAINOR & TRAINOR, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

We have viewed the picture or photoplay as thrown upon a screen by the use of said exhibits, and, after such view and a consideration of all the other evidence in the case, we are of the opinion that the judgment should be reversed upon the ground that the verdict and special findings of the jury, and the judgment, are not warranted by the evidence.

In *Block v. City of Chicago*, 239 Ill. 251, it is said (pp. 263-4-5):

"It has never been questioned that power may be delegated to officers to determine facts, such as whether animals are diseased so as to exclude them from importation; whether meat or food is found upon an inspection to be unhealthy or diseased; whether an assemblage amounts to a riot to be dispersed. There are numerous facts of that kind which must be left to administrative officers, and the ordinance is not invalid because the chief of police must determine the question of fact whether a picture or series of pictures is immoral or obscene. But it is said that, conceding the power of the legislative body to authorize an administrative officer to determine the question, the ordinance fixes no standard by which it is to be determined. * * * It is doubtless true, as said by counsel, that there are people who differ upon the subject as to what is immoral or obscene. * * * The

average person of healthy and wholesome mind knows well enough what the words 'immoral' and 'obscene' mean and can intelligently apply the test to any picture presented to him.  *  *  *  It is presumed that the chief of police, or the mayor, in case of an appeal to him, will perform his duty with reasonable intelligence and in accordance with the generally accepted meaning of the words.  If there should be an abuse of power on the part of either the chief of police or the mayor, the ordinance does not prevent an application to a court to compel either officer to perform his duty and issue a permit for a picture which is not immoral or obscene.  *  *  *  It is true that pictures representing the career of the 'James Boys' illustrate experiences connected with the history of the country, but it does not follow that they are not immoral. Pictures which attempt to exhibit that career necessarily portray exhibitions of crime, and pictures of the 'Night Riders' can represent nothing but malicious mischief, arson and murder.  They are both immoral and their exhibition would necessarily be attended with evil effects upon youthful spectators.  If the other pictures for which permits were refused were of similar character the chief of police is to be commended for the refusal.''

In the case of *People ex rel. Guggenheim v. City of Chicago*, 209 Ill. App. 582, a petition for mandamus was filed to compel the general superintendent of police of said city to grant a permit to exhibit a certain moving picture entitled ''Sins of the Sons.'' Issue was taken on the facts whether the picture was ''immoral'' within the meaning of the city ordinances, and whether the respondent had abused the power vested in him in refusing a permit.  The lower court, in a trial without a jury, found the issues for the petitioner, but this branch of this Appellate Court reversed the judgment.  This court said (pp. 584-5):

''If in the exercise of sound discretion the censor so deemed it'' (viz., immoral), ''then unquestionably it was his right and duty to reject the application for

a permit. * * * And the mere fact that the court took one view does not justify the conclusion that the respondent abused his power in taking another. If there is a reasonable basis for the censor's opinion, then a refusal of a permit based thereon could not be deemed an abuse of power, and the picture unquestionably presents ground for such an opinion. One of its scenes, much dwelt upon in the evidence, shows the introduction of an innocent boy into a house of prostitution and vividly portrays the triumph of its evil suggestions, a scene better calculated to appeal to the prurient and degenerate than to illuminate the moral purposes of the play, and one that may well be deemed harmful in influence when presented to mixed audiences. * * * The function of censorship is *quasi* judicial in character, calling for the exercise of sound discretion, with which the courts will not ordinarily interfere except in a clear case." (Citing authorities, among them the *Block* case, *supra,* and *People v. Webb,* 256 Ill. 364.) "The evidence does not show such abuse, and for that reason alone, regardless of any difference of views as to whether the picture is immoral, the judgment cannot stand."

. In *People ex rel. Fox Film Corporation v. City of Chicago,* 209 Ill. App. 586 (not reported in full), the trial court directed a verdict for the petitioner in a mandamus suit to compel the general superintendent of police to grant a permit to exhibit in said city a certain moving picture entitled "The Tiger Woman," and a judgment in favor of the petitioner followed. The principal questions of fact raised by the pleadings were whether the picture was immoral or would tend to create harmful impressions on the minds of children. The picture was exhibited on a screen to the court and jury. The trial court having stated that such exhibition made a prima facie case for the petitioner, respondent called as a witness the official charged with the duty of censorship of moving pictures. He described various scenes in the picture and stated that the refusal to grant a general permit was

based on his opinion that the picture was immoral and tended to produce a harmful influence upon children. Other witnesses more fully described the scenes and plot, which presented the wiles and schemes of an unchaste woman and circumstances of murder, robbery and theft as incidents to her immoral purposes. In reversing the judgment and remanding the cause this branch of this Appellate Court said:

"The question was not alone whether the picture was immoral or had such harmful tendency but whether respondent abused his discretion in refusing a permit. The law does not contemplate that a court and jury shall sit as an appellate tribunal merely to review the censor's opinion. The basis of a mandamus proceeding in such a case must be an alleged abuse of official power. While a court or jury's opinion might differ from his, that fact alone would not justify the writ. The nature of his duties under the ordinances was such as to call for the exercise of official discretion, with which the courts will not generally interfere unless abused." (Citing authorities.) "When, therefore, the evidence presents grounds, as here, for a diversity of opinion as to the harmful tendency of the picture, not only must the case be submitted to the jury on that question of fact, but before they can properly find for the petitioner they must also be able to say from the evidence that there was an abuse of power in refusing a permit."

It is probably true that different people would entertain different views on the question whether the photoplay here involved was or was not immoral. We are of the opinion that there are certain scenes in it that are immoral or of an immoral nature, or at least scenes as would furnish a reasonable basis for the censor's decision that a permit to exhibit the photoplay should be refused upon such grounds. We are also of the opinion that there are certain scenes in it that would tend to create a harmful impression upon the minds of children. But, outside of the questions

of the immorality of the photoplay, or such harmful tendency, there is no direct proof of abuse of the official discretion of the censor, and such abuse clearly cannot be inferred from this particular photoplay. (See *People ex rel. Konzack v. Schuettler*, 209 Ill. App. 588, 591.) There being an absence in the record of evidence of abuse of the official power or discretion of the censor, it follows, under the authorities above cited, that the judgment awarding the writ was erroneous, and it is, therefore, reversed.

*Reversed with finding of facts.*

MR. PRESIDING JUSTICE MATCHETT and MR. JUSTICE BARNES concur.

Finding of facts. We find as ultimate facts in this case that certain scenes in the photoplay in question are immoral and of an immoral nature and such as would tend to produce a harmful influence upon the minds of children, and that the appellant did not abuse his power or discretion in refusing a permit to the appellee to exhibit said photoplay in the City of Chicago.