THOMAS C. HALL *et al.*

*v.*

THE PEOPLE *ex rel.* JAMES H. ROGERS *et al.*

1. MANDAMUS—*petition for, to compel commissioners to open highway—averments therein, whether sufficient.* Upon the filing of a petition for a writ of mandamus to compel the commissioners of highways of a certain township to take the necessary steps to open a road, which, as alleged, had been already laid out by a former board of commissioners of the township, and

| 57 | 307 |
|---|---|
| 125 | 341 |
| 57 | 307 |
| 127 | 626 |
| 57 | 307 |
| 171 | 517 |
| 57 | 307 |
| 178 | 609 |
| 57 | 307 |
| 179 | 172 |
| 57 | 307 |
| 95a | [1]287 |
| 57 | 307 |
| 193 | [2]571 |
| 57 | 307 |
| 203 | [2]277 |

the damages to the several parties over whose land the road was to be constructed had been assessed against them, it being objected that it did not appear that the relators were citizens of the town, although it was regarded as more accurate if the petition had contained an express averment that the relators resided in the township, yet it appearing from the record that one of the relators was one of the commissioners who laid out the road, and that the other was one of the petitioners for the same, and so described in the proceeding, such allegation being nowhere in express terms denied in the return to the alternative writ, it was *held* sufficient in that regard.

2. Same—*who may institute the proceeding.* The act sought to have performed by the respondents, being a public duty, in which the people of the whole town were interested, any citizen of the town had the right to become a relator and institute the proceeding. It was unnecessary for the relators to show they had any other interest in the object of the writ than that of mere private citizens interested in common with the public in the performance of the act.

3. Highways—*laying out the same—action of majority of commissioners only required.* In laying out the road, the action of a majority of the commissioners thereon, was sufficient to render their proceeding valid, the statute having expressly provided that whenever the commissioners of highways shall receive a petition for a highway, that "they, or a majority of" them "may proceed to act in the premises."

4. Same—*assessment of damages on lands over which constructed—agreement with owners thereof.* Upon objection that the commissioners never sought to agree with the several owners of land over which the road was to be constructed, before they proceeded to assess the damages that they would severally sustain, it was *held*, not indispensable that they should. They might lawfully proceed to assess the damage without first inquiring of the owner of the land whether they could agree with him as to the amount of damage he would sustain, that part of the statute being simply directory and not mandatory.

5. Same—*location thereof—mandamus—notice to remove fences.* The respondents in their return, claiming they were not bound to execute the writ, for the reason it was not their duty to open the road until after the owners of land over which the road would pass had been legally notified to remove their fences, and averring that no such notice had ever been given or served, it was *held*, such allegation presented an immaterial issue. The object of the proceeding being to compel the commissioners to take every initiatory step and to perform all official acts necessary to open the road, if the requisite notice to remove fences had not been given as required by the statute, and the proceedings in laying out the road were in all other respects legal, it was their duty to, and they should be compelled and required to give such notice.　　. .　　　　　　　　　　　:

6. SAME—*of notice to owners of land over which located, to remove fences—extension of time by commissioners.* As a general rule, the sixty days notice required by the statute to be given to the owners of land over which a road has been located, to remove their fences, should be given upon the laying out of the road, if the determination of the commissioners shall not have been appealed from. But, although there does not appear to be any express authority conferred upon the commissioners to give an extension of time, that provision of the statute should have a reasonable construction, and doubtless, cases may arise where it would not be the duty of the commissioners to proceed at once to open the road; as where a road has been laid out through cultivated and enclosed lands, at a season of the year when there are growing crops on the same, it would not be unreasonable to allow the owners sufficient time to gather their crops. Yet the mere fact that it would be impracticable, on account of the wet weather of the season succeeding the time at which the road is located, to open and put the same in repair, would not of itself be sufficient to authorize the commissioners to give an extension of time for the removal of fences. Or where the owners of lands have planted crops after the final location of the road, it seems they should not for that reason be allowed an extension of time for the crops to mature and in which to gather the same.

7. MANDAMUS—*to compel commissioners to open highways—whether the proper remedy.* Upon it being insisted that inasmuch as the law imposed penalties upon the commissioners of highways, Sess. Laws 1861, page 248, section 13, for neglect of duties enjoined upon them, that therefore a person although interested in the performance of those duties could not invoke the aid of a writ of mandamus, it was *held,* that such was not a proper construction of that statute, the penalties there provided for being regarded as in addition to the common law remedies—that act in no wise repealing the remedies to which a party would be entitled at the common law.

8. Nor does sec. 4, of the act of 1867, entitled "an act to reduce the act to provide for township organization, and the several acts amendatory thereof into one act," which provides a mode for compelling the construction and repair of bridges and roads, where the same have been neglected by the town authorities, in any wise affect the common law remedies to which a party is entitled, or have any application, in cases of this character.

9. SAME—*averment and proof—what necessary.* It was *held* essential, in this case, to the awarding of the writ, that the relators should aver and prove that the damages assessed to the land owners on the route of the road, had either been paid or released, or that there was money in the town treasury with which to tender or pay the same, or that the necessary funds were otherwise under the control of the commissioners.

APPEAL from the Circuit Court of Peoria county; the Hon. S. D. PUTERBAUGH, Judge, presiding.

Messrs. JOHNSON & HOPKINS, for the appellants.

Messrs. McCULLOCH & CRATTY, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This was a petition for a writ of mandamus, on the relation of James H. Rogers and Thomas Shaw, in the Circuit Court of Peoria County, against Thomas C. Hall, Noah Marshall, and Henry Shaw, commissioners of highways of the township of Radnor, to compel them to take the necessary steps, under the law, to open a certain highway, which it is alleged had been previously laid out by a former board of commissioners of said township.

The petition recites at length, all the proceedings had by the commissioners of highways in laying out the road in question, from the presentation of the petition for the same, by the requisite number of legal voters, down to the assessment of damages to the several parties over whose land the road is to be constructed.

To the alternative writ, issued herein, the respondents Noah Marshall and Henry Shaw made return :

*First,* That they are not bound to execute said writ, because the relators are private individuals, and do not appear to be citizens of the town of Radnor, and that the people and authorities of Radnor have the exclusive control of highways in said township.

*Second,* Because said highway is not a legal highway, for the reason, that only two of the commissioners acted in laying out the same.

*Third,* Because they are not bound to open said road, until after the owners of land over which the road will pass, have been legally notified to remove their fences; and they deny that any such notice has ever been given or served.

*Fourth,* Because the time has not yet elapsed within which the owners of the land had time given them, and were notified by these respondents, to remove fences, and because

the respondents, commissioners of highways, soon after their election, and before the commencement of this proceeding, in the exercise of their best discretion as commissioners, considering it impossible to open and work said road during the wet weather and spring of that year, did, in the month of May, 1869, inform and notify the owners of land, that the said road need not be opened until the first day of October, 1869, the respondents believing an earlier opening of said road impracticable, oppressive and useless, and so gave the extension of time aforesaid, as they well might do ; that the owners of land acted in good faith on said notice, and that the time so given in which to open said road had not expired when these proceedings were instituted.

*Fifth,* Because said writ is not sufficient in substance and in material matter, for them to answer unto, or execute.

A demurrer was interposed by the relators, to the return, and all and every allegation thereof, which was by the court sustained. The respondents electing to stand by their return, the court awarded a peremptory writ of mandamus and gave judgment against the respondents for costs.

The appellants bring the cause to this court, and assign for error the following causes, viz:

*First,* That the court erred in sustaining the demurrer to the return.

*Second,* That the court erred in awarding the peremptory writ of mandamus in said cause.

Although the return is informal, and technically defective, we have not for that reason, sought to avoid the consideration of the questions attempted to be presented by the return.

In considering the first error assigned, we propose to notice the objections to the legality of the proceedings in laying out the highway in question, and the reasons for not opening the same, in the order presented by the appellants in the return itself.

By the first allegation in the return it is averred, that it does not appear that the relators are citizens of the town of Radnor,

312     HALL *et al. v.* THE PEOPLE *ex rel.*    [Sept. T.,

Opinion of the Court.

in the county of Peoria. This objection is not well taken. Upon inspection of the record, we think it sufficiently appears that the relators were not only citizens of the county of Peoria, but also residents of the town of Radnor, in which the road in question is situated. It appears from the record that one of the relators was one of the commissioners who laid out this very road, and that the other was one of the petitioners for the same, and is so described in the proceedings, and this allegation is nowhere, in express terms, denied in the return. It would doubtless have been more accurate if the petition had contained an express averment, that the relators resided in Radnor township.

It is insisted, however, that the relators in this instance were mere private citizens, having no other interest in the highway than the public generally, and therefore, that neither the alternative nor the peremptory writ should have been awarded on their relation. The respondents deny that a mere private citizen, if he has no other interest than the public in general have in the performance of a duty by a public officer, can invoke this extraordinary writ, and thereby put the machinery of the law in motion for the benefit of the public. It is apparent that if these relators resided in the township, they would have an interest, in common with all other citizens of the town, in having this highway opened to the public use. It would be most extraordinary if commissioners of highways could stand still and say that they alone are invested with the sole discretion to say when and in what manner they will perform the public duties imposed by their office, and that no mere private citizen can call upon the courts to compel them to perform those public duties in which all are alike interested. Such is not the law. It is undoubtedly true, as a general rule, that where a party invokes the aid of this writ, he must have some interest, special to himself, or in common with the public, in the performance of the act he seeks to compel. A mere stranger can not officiously interfere to compel the performance of an act in which he has no interest whatever,

for the very satisfactory reason, that it is supposed the real parties in interest, when they desire to have the act performed, will move in the matter of their own motion.

The case of *The County of Pike* v. *The State,* 11 Ill. 202, is conclusive on this point. It was there said, that " where the object is the enforcement of a public right, the people are regarded as the real party, and the relator need not show that he has any legal interest in the result. It is enough that he is interested as a citizen in having the laws executed, and the right in question enforced."

The rule there stated was approved by this court in the case of *The City of Ottawa* v. *The People,* 48 Ill. 233.

In this instance the act to be performed by the appellants, is a public duty, in which the people of the whole town are interested, and no doubt is entertained of the right of any citizen of the town to become a relator and institute this proceeding.

It is alleged in the return, that only two of the commissioners acted in laying out the highway in question, and it is insisted for that reason, that the acts of the two were void, without the presence of the third one. It is a sufficient and complete answer to this objection, that the statute (Gross' Comp., § 53, art. 17, p. 771,) has expressly provided, that whenever the commissioners of highways shall receive a petition for a highway, " they or a majority of" them " may proceed to act in the premises." It was, therefore, no valid objection to this road that only two of the commissioners acted originally in locating the same.

It is further objected in the second allegation, that the commissioners never sought to agree with the several owners of land over which the road was to be constructed, before they proceeded to assess the damages that they would severally sustain. It was not indispensable that they should. They might lawfully proceed to assess the damage without first inquiring of the owner of the land whether they could agree

with him as to the amount of damage he would sustain. That part of the statute was simply directory, and not mandatory.

The third allegation of the return, presents an immaterial issue. If no notice had been given to the land owners to remove their fences, as the law directs, it was the plain duty of the appellants to give such notice. No other persons could lawfully give the notice, and they can not be permitted to avail of their own neglect. The object of this proceeding is to compel the appellants to take every initiatory step, and to perform all official acts necessary to open the road, and if the requisite notice to remove fences has not been given, as required by the statute, they should be compelled and required to give such notice, if the proceedings in laying out the road are in all other respects legal.

The fourth allegation in the return is in no wise responsive to the writ, but sets up by way of excuse for their action in not opening the road, that the respondents, in May, after their election in April, 1869, notified owners of land over which the road passes, that they would not be required to open the road until the first day of October following, which time had not elapsed when this writ was sued out. The reason assigned by the respondents for giving the extension of time in which to open the road, is, that it would be impracticable during the wet weather of the spring and summer of that year to open and put the same in repair.

The demurrer of course admits the truth of this allegation, and the question arises, had the commissioners of highways, the respondents, any authority, under the statute, to give such an extension of time for the opening of the road? The record discloses that the final order, establishing the highway, was made by the supervisors, to whom an appeal had been taken, on the 24th day of November, 1868. By the statute (Gross' Comp., p. 76, § 90) it is provided, that whenever the commissioners of highways shall have laid out any public highway through enclosed or improved lands, and their determination shall not have been appealed from, they shall give the owners

of the land through which the road passes, sixty days notice in writing to remove their fences.   As a general rule the notice should be given upon the laying out of the highway, if the determination of the commissioners shall not have been appealed from.   There does not appear to be any express authority conferred on the commissioners of highways to give an extension of time.   This provision of the statute, however, should have a reasonable construction.   Doubtless a case might arise where it would not be the duty of the commissioners to proceed at once to open the road.   For instance, where a road has been laid out through cultivated and enclosed lands, at a season of the year when there were growing crops on the same, it would not be unreasonable to allow the owners sufficient time in which to remove their fences.   But no such state of facts is alleged in the return as would authorize the commissioners to give an extension of time.   The road in question had been located the previous fall, and if there were any crops on the land at the date of the extension of time, the same were planted by the owners, with the full knowledge of the location of the road.

If they could extend the time for the causes set forth in the return for six months, they could for one year, and so on until the limitation of five years, in which the road could be opened would expire.   The commissioners have no such authority under the statute.

It is insisted that inasmuch as the law imposes penalties upon the commissioners of highways (Sess. Laws 1861, p. 248, § 13,) for neglect of duties enjoined upon them, therefore a person, although interested in the performance of those duties, can not invoke the aid of the writ of mandamus.   Such is not a fair construction of that statute.   The penalties there provided for are in addition to the common law remedies, and that statute does not, and was not intended by the legislature, to repeal the common law remedies to which a party would be entitled.

The act of 1867 (Sess. Laws, p. 173, § 4,) to which our attention has been called, has no application whatever to a case of this kind.

We are therefore of opinion that the extension of time given by the commissioners of highways to the owners of land over which the road would pass, in which to remove their fences, is without authority of law, and is void, and would constitute no valid objection to the issuing of the peremptory writ of mandamus.

The second error, viz: that the court erred in ordering 'the peremptory writ of mandamus to issue is well assigned.

A party can not be compelled to perform an act, unless it is made to appear, affirmatively, that it is his clear duty to do so. The party that seeks to compel the performance of an act must set forth every material fact necessary to show that it is the plain legal duty of such party to act in the premises, before the courts will interfere. Any other rule would often do great injustice.

The petition in this case is manifestly defective, in not averring that the damages assessed to the land owners on the route of the road have been paid or released, or that there is money under the control of the commissioners of highways with which to tender or pay the damages so assessed. No man can be compelled to part with his property without just compensation. This is a constitutional right that he can not be deprived of by any statute. No corporation, public or private, can appropriate the property of any one to their own use without first tendering or paying the damages assessed under the forms of the law. The party ought not to be driven to his action against a corporation, responsible or irresponsible, for his damages. This would be to take his property without first making compensation and would be a plain violation of a constitutional right.

Under the peremptory writ awarded in this case, if the damages have not been paid, or released by the owners of the land, it would be the duty of the commissioners of highways to tender such damages before proceeding to open the road. It was therefore material that the relators should aver in their petition, and prove, that the damages which had been assessed

to the land owners, had either been paid or released, or that there was money in the town treasury with which to pay the same, or that such funds were otherwise under the control of the commissioners. This fact not appearing, it was error in the court to award the peremptory writ of mandamus.

For the error indicated the order of the court will be reversed and the cause remanded, with leave to the relators to amend their petition so as to show that the damages assessed to the several land owners have been paid or released, or that there is money under the control, or subject to the order of the commissioners of highways, with which to pay the same, and also to show affirmatively that the relators were residents of the township of Radnor.

*Judgment reversed.*