THIRD DISTRICT—APRIL, 1924. 111

The People v. The Dept. of Public Works et al., 234 Ill. App. 111.

## The People of the State of Illinois ex rel. James M. Greene et al., Appellants, v. The Department of Public Works and Buildings of the State of Illinois et al., Appellees.

### Gen. No. 7,678.

1. HIGHWAYS—*hard road must be as near as practicable on main traveled roads.* The Hard Roads Act of 1917, contemplates that the hard-surfaced roads be constructed, as far as practicable, upon the main traveled public highways so as to be of service to the largest number of people and give connection between the cities named and the intervening communities, and the board has no discretion to locate them otherwise, either in whole or in part, except only to make such minor changes in the location of the routes as are necessary to carry out the provisions of the Act.

2. MANDAMUS—*inferences from petition that duty was not performed.* Where the just and reasonable inference to be drawn from the averments of a petition for mandamus to compel the road authorities to relocate the proposed route of a highway to be constructed under the Hard Roads Act of 1917 is that the changes made are not minor changes nor necessary in order to carry out the provisions of the Act and that the proposed route does not furnish the reasonable connection contemplated by the Act between the intervening communities which would result from using the main traveled highway between the points mentioned, the court erred in dismissing the petition on demurrer.

HEARD, J., dissenting.

Appeal by plaintiffs from the Circuit Court of Sangamon county; the Hon. NORMAN L. JONES, Judge, presiding. Heard in this court at the October term, 1923. Reversed and remanded with directions. Opinion filed April 30, 1924.

L. W. INGHAM AND HERRICK & HERRICK, for appellants.

EDWARD J. BRUNDAGE, Attorney General, GEORGE C. DIXON and VIRGIL L. BLANDING, Assistant Attorneys General, for appellees; C. N. BOORD and A. D. RODENBERG, of counsel.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

In this case, a petition for mandamus by the People of the State of Illinois on the relation of James M. Greene and others, including residents and taxpayers of Wapella and Clinton in De Witt county, was filed in the Circuit Court of Sangamon county against the appellees, the Department of Public Works and Buildings, and Cornelius N. Miller, as Director of Public Works and Buildings, and Frank P. Sheets, as Superintendent of the Highways of the State. It is alleged in the petition that the appellees have materially and arbitrarily changed a part of route No. 2, one of the main routes provided for by the "Hard Roads Act" of 1917, namely, that part of the route which was designed to connect the Villages of Heyworth and Wapella with the City of Clinton; and that the changes were made in violation of the provisions of the Act referred to. The petition prays that the appellees may be compelled by mandamus to relocate that part of the route No. 2 designated, in such a manner as to comply with the provisions of the Act. A demurrer to the petition was interposed in the court below and was sustained by the court; and the court rendered judgment dismissing the petition and assessing costs against the relators. This appeal is prosecuted from the judgment.

It is argued by the appellees that the averments of the petition, concerning the arbitrary changes in the route at the points mentioned, are not allegations of fact, but mere conclusions of the pleader; and that the petition does not show that the changes made were not such minor changes which, in the exercise of the discretion, the Department of Public Works and Buildings had authority to make in locating Route 2. The Act referred to is: "An Act in relation to the construction by the State of Illinois of a State-wide system of durable hard-surfaced roads upon public highways of the State and the provision of means for the payment of the cost thereof by an issue of bonds

for the State of Illinois" and was adopted by a vote of the People November 5, 1918. Section 1 [Cahill's Ill. St. ch. 121, ¶ 183] of the Act, provides that a State-wide system of durable hard-surfaced roads be constructed by the State of Illinois as soon as practicable, upon the public highways of the State; and along the routes described therein, as near as may be. Section 2 [Cahill's Ill. St. ch. 121, ¶ 184] provides that the construction of this system of roads, and all work incidental thereto, shall be under the general supervision and control of the Department of Public Works and Buildings, subject to the approval of the Governor of the State; also, that the Department of Public Works and Buildings shall have power to make, and shall make final decisions affecting the work provided for in this section, and all rules and regulations it may deem necessary for the proper management and conduct of the work, and for carrying out all of the provisions of the Act in such manner as shall be to the best interest and advantage of the People of the State; and section 9 [Cahill's Ill. St. ch. 121, ¶ 191] provides: "That the general location of the routes upon and along which said proposed roads are to be constructed shall be substantially as described in this section, so as to connect, with each other, the different communities and the principal cities of the State: *Provided, however,* that said Department of Public Works and Buildings shall have the right to make such minor changes in the location of said routes as may become necessary in order to carry out the provisions of this Act." The location of route No. 2 is described in this section as: "Beginning in a public highway near Beloit, Wisconsin, and running along such highway in a general southerly direction to Cairo, affording Rockford, Oregon, Dixon, Mendota, Peru, La Salle, El Paso, Bloomington, Clinton, Decatur, Pana, Vandalia, Centralia, Duquoin, Carbondale, Anna, Cairo and the intervening communities

reasonable connections with each other.'' The petition alleges, concerning the propriety of the changes made, that the Village of Wapella is an incorporated village, under the general incorporation laws of the State, with a population approximately of 600 people, and is situated about five miles practically due north of the City of Clinton; that the cities of Bloomington, Clinton and Decatur are connected with a direct line of highways known as the Meridian Trail; and that the Meridian Trail is the main traveled highway for horse drawn and motor vehicles between the cities of Bloomington and Decatur, and particularly between the Village of Wapella and City of Clinton; and is a well improved, well kept and maintained highway, particularly that portion thereof from the Village of Wapella to the City of Clinton; that the Meridian Trail from Wapella to Clinton runs through a level prairie country its entire distance, with the exception of a small hill a short distance north of Clinton; and with no dangerous turns or dangerous curves therein; that this public highway, and particularly, that portion thereof, between the Village of Wapella and the City of Clinton, is the only main public thoroughfare for public travel for horse drawn and motor vehicles between the said Village of Wapella and City of Clinton, and is so constructed as to have as few grades and turns as is practical and consistent with the safety and welfare of the traveling public, and serves the traveling public between the City of Clinton and the Village of Wapella to the greatest advantage; and that the Meridian Trail passes through the east portion of the Village of Wapella; and from Wapella to Clinton, about a quarter of a mile east of the Illinois Central Railway, and the Illinois Traction system; and runs practically due north and south to a point about one and a half miles north of the City of Clinton, at which point the highway crosses said lines of railway and comes to a point about 200 yards west of the right of

way of the Illinois Traction system, from which point said trail or highway runs practically straight and directly into the City of Clinton, on a street known as Center Street, thus passing through the public square and the main built-up business and residence portion of the City of Clinton. The petition also avers that, notwithstanding the advantages of the highway in question to furnish this reasonable connection between the Village of Wapella and City of Clinton, the Department of Public Works and Buildings refused to locate said hard-surfaced road therein, but arbitrarily, and without any good and sufficient reason therefor, has had a road surveyed through the County of De Witt in the State of Illinois, different from that provided by the terms of the Act; and is now attempting to procure, and have procured, rights of way for the purpose of constructing said hard-surfaced route No. 2 in such a way as not to give reasonable connection between the communities of Heyworth and Wapella along said route, that between Wapella and Clinton said route is diverted from the main public highway mentioned to a road which is not a main traveled road, for a distance of about one-sixteenth of a mile; and then proceeds for about three-quarters of a mile along a section line, but over no existing road or highway, to a point about one fourth of a mile to the corner of certain sections of land, where it will be necessary for the proposed road to make a jog to the west of a cemetery; and thereafter, the proposed road proceeds south along a public highway, which is not a main traveled highway, to a point approximately one-half a mile north of a congressional township line, from which point the proposed route proceeds south on the section line between two fractional sections to the congressional township line, and over no existing highway; and that, on said township line, the proposed route makes a jog or bend to the east over no existing highway for a distance of a few rods to the

north; and then proceeds south along the section line, and over no existing public road or highway, to the township line between the towns of Clinton and Wapella; and from that point it proceeds south on a public road to a section line, to a point about one hundred sixty rods south; and at that point jogs or bends to the east for a distance of approximately one quarter of a mile, following the public road mentioned; and then proceeds south along the route of an existing road to the corporation line of the City of Clinton; thence jogging to the west along a road and along the corporation line of the City of Clinton for about a quarter of a mile; and thence south along the west corporation line of the railroad track of the Illinois Central Railroad Company, or going by subway under said tracks, or by elevation over said tracks; that said proposed route to be used for said hard-surfaced road, from the De Witt county line to the north line of the town of Clinton, being a distance of approximately four and a quarter miles, runs over a territory where there is not, and never has been, any public highway for a distance of one and one-fourth miles; and said proposed route is located at least one-half mile west of the westerly boundary line of the Village of Wapella; and following the now established roads, it is by the usual and only traveled route, practically one and one-fourth miles from the center of the Village of Wapella to the route proposed; instead of following the usual traveled road between the Village of Wapella and the City of Clinton, namely, the Meridian Trail, the proposed route is located more than a mile west of said Meridian Trail, and is built through a rough portion of the country from Wapella to Clinton, and runs along the west boundary line of the City of Clinton, so that if the road is built only about one-half would be in the actual built portion thereof; and the remainder would be outside of the corporate limits of the City of Clinton;

and in that portion which would be in the City of Clinton, would be in its outskirts and environments; that the proposed route, or a portion thereof, immediately north of Wapella, traverses a sparsely settled community, over timber country and timberland, necessitating the construction, at an extravagant cost, of a great number of fills and grades, and the climbing of a large number of hills; and that portion of the proposed route immediately meandering south of the City of Clinton, for a distance of about a mile, is over a wet and swampy portion, and through great hills, and over territory not generally used by the City of Clinton, nor by any community or the traveling public, and over no established road; and that from a point within a mile south of the City of Clinton, the cost of constructing the proposed hard roads would amount to at least $200,000 in excess of the cost of constructing the road on the Meridian Trail Highway between the City of Clinton and the Village of Wapella; that the proposed route does not afford any more direct line of travel than the line of the Meridian Highway, nor is it any more safe for travel by reason of the avoidance of grade crossings through the Village of Wapella and the City of Clinton than the highway mentioned, but crosses the Illinois Central Railroad at what is known to be the most dangerous crossing in the City of Clinton; that the route as proposed will be an unnecessary burden upon the taxpayers and a waste of the state funds; that the expense of the maintenance of the proposed route in the future, by reason of the grades and fills required, will make an unnecessary burden upon the taxpayers, and will not afford the City of Clinton and the Village of Wapella reasonable connections with each other; and that, by the location of the proposed route, certain landowners along the proposed route are favored to the great injury and damage of the people, and the taxpayers of the state.

118     APPELLATE COURTS OF ILLINOIS.

The People v. The Dept. of Public Works et al., 234 Ill. App. 111.

The matters recited, which are stated as facts, in the petition, are admitted by the demurrer and appear to be legally sufficient to require an answer from the appellees, either that the charges made are not true, or a showing that the proposed route, away from the main traveled highway, is merely a minor change which is necessary to carry out the provisions of the Act. It is clear that the Act contemplates that the hard-surfaced roads be constructed as far as practicable upon the public highways; and as near as may be on the main traveled highways, so as to be of service to the largest number of people, and so as to give reasonable connection between the cities named, and the intervening communities, between such cities along the route; and the Board has no discretion to locate them otherwise, either in whole or in part, but has authority only to make such minor changes in the location of the routes as may become necessary in order to carry out the provisions of the Act. The just and reasonable inference to be drawn from the averments of the petition is that the changes made are not minor changes, nor necessary in order to carry out the provisions of the Act; and that the proposed route does not furnish the reasonable connection contemplated by the Act, between the intervening communities of Heyworth and Wapella, with the City of Clinton; and which would result from using the main traveled highway between the points mentioned.

We are of opinion, therefore, that the court erred in sustaining the demurrer and dismissing the petition; and the judgment is therefore reversed and the cause remanded with directions to overrule the demurrer.

*Reversed and remanded with directions.*

MR. PRESIDING JUSTICE SHURTLEFF specially concurring: I concur in the majority opinion of the court. The allegations of the petition should be answered in the court below. The courts cannot control or regulate

the affairs of the administration department left to the discretion of public officials, and every intendment is in their favor; but when the purpose of the law is plainly stated, and the facts charged and admitted to be true, for the purpose of the hearing, show that public officials are arbitrarily and illegally disregarding the plain purpose and intent of the statute and following some other course or doing some other act, in lieu of the Act pointed out by the statute to be done, the writ of mandamus will issue. (*State Board of Equalization v. People*, 191 Ill. 528; *The People v. Webb*, 256 Ill. 364; *The People's Gas Light & Coke Co. v. Stuckart*, 286 Ill. 164, 169; *The People v. Board of Sup'rs of Gallatin Co.*, 294 Ill. 579, 584.)

The court will not concern itself in this case as to the particular line of the route to be followed by the administration department, or the details of the route and construction of the road, other than to see that the provisions of the law are adhered to; but when it is charged that the spirit, intent, and plain provisions of the law are being violated, and that another and different route, from the one pointed out in the law, and adopted by the people, has been selected by the administration department and that a large amount of public funds is about to be dissipated and wasted by the arbitrary and illegal action of the public officials, the writ of mandamus will issue and the public officials will be, by said writ, directed to follow the law. This is not invading any matter of selection or construction left to the discretion of the administration department. (*State Board of Equalization v. People, supra; The People v. Webb, supra;* and *The People's Gas Light & Coke Co. v. Stuckart, supra.*)

The allegations, in the petition, charge facts sufficiently to warrant the court in overruling the demurrer and requiring appellees to answer the petition.

MR. JUSTICE HEARD dissenting: Two principal questions are presented by this appeal—first, whether

120    APPELLATE COURTS OF ILLINOIS.

The People v. The Dept. of Public Works et al., 234 Ill. App. 111.

mandamus is a proper remedy in the premises, and, if that question be determined in the affirmative, second, whether sufficient facts are stated in the petition to require an answer from the respondents. The respondents are the Department of Public Works and Buildings of the State of Illinois, a branch of the Executive Department of the State, functioning through certain officials and agencies created by statute, and Cornelius N. Miller as Director of Public Works and Buildings, and Frank P. Sheets, as Superintendent of Highways of the State of Illinois, both being officials of the Executive Department of the State.

The duties involved in this case are duties resting on respondents by virtue of "An Act in relation to the construction by the State of Illinois of a State-wide system of durable hard-surfaced roads upon the public highways of the State, etc."

Section 1 of the Act, provides that a State-wide system of durable hard-surfaced roads be constructed by the State of Illinois, as soon as practicable, upon the public highways of the State along the routes described therein, as near as may be; section 2 provides that the construction of this system of roads, and all work incidental thereto, shall be under the general supervision and control of the Department of Public Works and Buildings, subject to the approval of the Governor of the State; also, that the Department of Public Works and Buildings shall have power to make, and shall make final decision affecting the work provided for in this section; and all rules and regulations it may deem necessary for the proper management and conduct of the work, and for carrying out all of the provisions of the Act in such manner as shall be to the best interest and advantage of the People of the State; and section 9 provides: "That the general location of the routes upon and along which said proposed roads are to be constructed shall be.

substantially as described in this section, so as to connect, with each other, the different communities and the principal cities of the State: *Provided, however,* that said Department of Public Works and Buildings shall have the right to make such minor changes in the location of said routes as may become necessary in order to carry out the provisions of this act.''

The location of route No. 2 is described in this section as:

"Beginning in a public highway near Beloit, Wisconsin, and running along such highway in a general southerly direction to Cairo, affording Rockford, Oregon, Dixon, Mendota, Peru, La Salle, El Paso, Bloomington, Clinton, Decatur, Pana, Vandalia, Centralia, Duquoin, Carbondale, Anna, Cairo and the intervening communities reasonable connections with each other.''

The Act fixes the routes upon which the roads are to be constructed in a general way by naming the termini which are in some cases hundreds of miles apart with no direct highway leading from one to the other, and in other cases several highways leading from one to the other, with many public highways intervening, and the power is delegated to the Department of Public Works and Buildings to determine, with the approval of the governor, the exact highway between the termini upon which the road is to be constructed. (*Mitchell v. Lowden,* 288 Ill. 327-341.) By the act in question such determinations are made final.

In 18 R. C. L. 114, it is said:

"Mandamus is prospective merely; accordingly, where redress for the past privation of a right as well as restoration in future is sought, a bill in equity is the proper remedy. It is not a preventive remedy; its purpose and object is to command performance, not desistance, and is a compulsory as distinguished from a revisory writ; it lies to compel not to revise or correct action, however erroneous it may have been, and is not like a writ of error or appeal a remedy for

erroneous decisions.   Upon an application for such writ the questions which usually arise are:   (1) Is there a duty imposed upon the officer; (2) is the duty ministerial in its character; (3) has the petitioner a legal right, for the enjoyment, protection or redress of which the discharge of such duty is necessary; (4) has he no other and sufficient remedy; and (5) in view of the fact that the issuance of the writ is not always a matter of right are the circumstances of the case such as will call forth the action of the court?''

It is a well recognized rule that where the performance of an official duty or act involves the exercise of judgment or discretion, the officer cannot ordinarily be controlled with respect to the particular action he will take in the matter, and where an officer in the exercise of a discretionary power, has considered and determined what his course of action is to be, he has exercised his discretion, and his action is not subject to review or control by mandamus; and so careful are the courts of encroaching in any manner upon the discretionary powers of public officials that if any reasonable doubt exists as to the question of discretion or want of discretion they will hesitate to interfere, preferring rather to extend the benefit of the doubt in favor of the officer.   (18 R. C. L. 124.)

The common-law writ of mandamus is a prerogative writ invented for the purpose of supplying defects of justice and issued where there was no other means of obtaining justice within the writ of the petitioner.   Its object is not to supersede but to supply the want of a legal remedy, therefore, to authorize the issuance of the writ two facts must coexist, the right to have the particular act or duty performed, and the want of an adequate, specific, complete and convenient remedy.   (18 R. C. L. 131.)

In *Marbury v. Madison,* 1 Cranch (U. S.) 137, it is said:

"Still, to render the mandamus a proper remedy, the officer to whom it is to be directed, must be one to whom, on legal principles, such writ may be directed; and the person applying for it must be without any other specific and legal remedy."

In the same case it is said:

"It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done, that the propriety or impropriety of issuing a mandamus is to be determined. Where the head of a department acts in a case in which executive discretion is to be exercised; in which he is the mere organ of executive will; it is again repeated, that any application to a court to control, in any respect, his conduct would be rejected without hesitation.

"But where he is directed by law to do a certain act affecting the absolute rights of individuals, in the performance of which he is not placed under the particular direction of the President, and the performance of which the President cannot lawfully forbid, and therefore is never presumed to have forbidden; as for example, to record a commission, or a patent for land, which has received all the legal solemnities; or to give a copy of such record; in such cases, it is not perceived on what ground the courts of the country are further excused from the duty of giving judgment that right to be done to an injured individual, than if the same services were to be performed by a person not the head of a department."

The duties of the respondents in the premises are subject to the approval of the governor. The petition in the case does not state whether or not such approval has been had. If the approval of the governor has not been had then petitioners have an adequate, specific, complete and convenient remedy by applying to the governor to withhold his approval from the selection of the route made by respondents. If location of the route has been approved by the governor then petitioners had an adequate, complete, specific and convenient remedy of which they did not

124     APPELLATE COURTS OF ILLINOIS.

The People v. The Dept. of Public Works et al., 234 Ill. App. 111.

avail themselves and cannot now be heard to complain.

The appeal alleges that the route in question has been selected and located by respondents, and as all public officers in the absence of proof to the contrary are presumed to have done their duty, and under the law no final location could have been made without the approval of the governor, on consideration of the demurrer in this case, the location of Route 2, as set forth in the petition, must be presumed to have been approved by the governor and for that reason the demurrer was properly sustained.

Mandamus will not lie when the official act to be performed depends on the act, approval, or co-operation of a third party not a party to the suit. (26 Cyc. 165; *State v. North American Land & Timber Co.,* 106 La. Ann. 621, 31 So. 172.)

While the governor was originally made a party defendant in this proceeding, after the demurrer to the original petition had been sustained, the action was dismissed as to him.

In *State v. Cavanac,* 30 La. Ann. 237, it is said: "A mandamus will not issue to compel a public official to perform a ministerial act when the evidence shows that the performance of that duty is a physical impossibility; or that his ability to carry out the mandate of the court depends upon the co-operative action of a third person who is not before the court." In *Secretary of Interior v. McGarrahan,* 9 Wall. (U. S.) 298, it was held that where the law required the Secretary of the Interior to issue a patent upon the applicant therefor, complying with certain conditions, that mandamus would not lie to compel the Secretary of the Interior to do his duty in that respect as the law required the patent to be signed by the President and Recorder.

In *State v. Ray,* 47 Mont. 570, 133 Pac. 961, it is said: "The rule is well settled that when the writ

will accomplish no beneficial result it will be denied (citing many authorities). The same rule applies where the official act to be performed depends upon the act, approval, or co-operation of a third person not a party, even though it is clearly the duty of the defendant to act. *State v. Cavanac,* 30 La Ann. 237; High on Extraordinary Remedies (3rd Ed.) § 14.''

In *Turnbull v. Giddings,* 95 Mich. 314, 54 N. W. 887, the Supreme Court of Michigan upon this question says: ''It must also clearly appear that the person to whom it is directed has the absolute power to execute it; otherwise, it will not be issued.''

In 1913 a statute of this State provided [Cahill's Ill. St. ch. 46, ¶ 82]: ''The Secretary of State, Auditor, Treasurer, and Attorney General, or any two of them in the presence of the Governor shall proceed within twenty days after the election, and sooner if all the returns are received, to canvass the votes given for   *   *   *   Representatives to Congress, Judges of the Supreme Court, Clerk of the Supreme Court, Judges of the Circuit Court, Senators, Representatives to the General Assembly, Members of the State Board of Equalization and Trustees of the University of Illinois, respectively, and the persons having the highest number of votes for the respective offices, shall be declared duly elected;   *   *   *   and to each person duly elected, the Governor shall give a certificate of election or commission, as the case may require, and shall cause proclamation to be made of the result of the canvass.'' An attempt was made to compel the Secretary of State, Auditor, Treasurer, Attorney General and Governor to correctly and properly canvass the abstract of votes as returned to them; to declare the petitioner elected to the office of Representative in the General Assembly; to cause proclamation of the result to be made and to issue a certificate of election to petitioner. The Supreme Court, after a lengthy resumé of the authorities, held in *Peo-*

126    APPELLATE COURTS OF ILLINOIS.

The People v. The Dept. of Public Works et al., 234 Ill. App. 111.

ple v. Dunne, 258 Ill. 441, that article 3 of the Constitution which divides the government of the State into three distinct departments, contemplates that neither department shall coerce the other, and hence, the Judicial Department is without jurisdiction to award a writ of mandamus to compel the Governor to perform a duty, either ministerial or discretionary, imposed upon him by his office, and said:

"It necessarily follows from uniform decisions of this court that we have no jurisdiction to award writs against the chief executive of the State commanding him to issue certificates of election to the relators. Whether the other executive officers who were made defendants could be coerced by the writ to do the things asked for, according to the view of this court as to the proper manner of canvassing returns, need not be considered, since the writs would be ineffective unless the Governor were included and required to make proclamations and issue the certificates."

Inasmuch as all official action of respondents in carrying out the provisions of the State-wide Highway Act [Cahill's Ill. St. ch. 121, ¶ 183 et seq.] are subject to the approval of the Governor and as such approval cannot be coerced by mandamus I am of the opinion that mandamus will not lie against respondents to compel the performance of any duties so far as the same are imposed upon them by the Act in question and that the court properly sustained the demurrer to appellants' petition.

Assuming, however, for the sake of argument, that mandamus will lie to compel respondents to perform their duties in the matter of the location or relocation of routes, under the act in question, the petition in this case falls far short of meeting the requirements of the law.

The allegations in the petition for mandamus must state facts, not conclusions, from which the court can see that petitioner has a clear, present, absolute right to relief. The duty to perform and the right to de-

mand performance must distinctly appear.  (26 Cyc. 429; *Stott v. Chicago,* 205 Ill. 281; *People v. Davis,* 93 Ill. 133.)  In testing the petition by demurrer the allegations in the petition are to be taken most strongly against the petitioner.  (*People v. Swigert,* 107 Ill. 494.)

The action is not brought by the Attorney General or State's Attorney, who are the accredited representatives of the public, but is brought in the name of the People on relation of certain individuals who allege that they are taxpayers.  The hard road in question is not to be paid for by taxation, but by moneys derived from the sale of bonds and it has been provided by law that the moneys derived from automobile license fees are to be devoted to the payment of these bonds.  The petition does not allege that petitioners are the owners of automobiles or that any of the other residents of either Clinton or Wapella are automobile owners.  So far as the averments of the petition show, petitioners have no direct, but only a contingent, interest in the premises.

It is a well settled rule that where the performance of the acts sought to be coerced requires the expenditure of money mandamus will not lie unless it is alleged and proven that the official has sufficient funds available for the purpose.  The relocation of the highway in question would require the expenditure of money and there is no allegation in the petition that respondents have moneys at their command available for such purpose.  (*Hall v. People,* 57 Ill. 307; *Board of Sup'rs of White Co. v. People ex rel. Com'rs,* 222 Ill. 9.)

The petition does not allege facts which show that the respondents have any present duty to do anything whatever with reference to the route in question. The Act in question provides that all payments for work shall be made out of a State Bond Road Fund which is derived from the sale of bonds, which the Act provides shall be issued and sold from time to

time as the road building work progresses, and there is no allegation in the petition that any of said bonds have been sold or that there is any money in said fund. The roads in question are only to be paid for from the proceeds of the $60,000,000 bond issue. By section 8 of the Act [Cahill's Ill. St. ch. 121, ¶ 198(9)] it is provided that the Department of Public Works shall divide the roads into convenient sections for construction purposes and that the construction work shall, so far as practically possible, be commenced in the different sections of the State at approximately the same time. Forty-six routes are provided for in said bill which are to be built, if possible, from the proceeds of the $60,000,000 bond issue. No route is given priority over any other route and no part of any route has an absolute right, if the sale of the bonds does not produce enough to build all of the forty-six routes, to priority. Such priority is left by the Act to the discretion of the department subject to the approval of the Governor. It is a matter of common knowledge, of which courts have taken judicial knowledge, that prices of labor and materials have greatly increased since 1917, to such an extent that there is little likelihood that all of the forty-six routes can be built from the proceeds of the sale of such bonds and it is probable that some portions of said forty-six routes cannot be built under the provisions of that Act. The fact that all of said routes cannot be so built was recognized by the Legislature in 1923, in the Act known as the $100,000,000 Bond Issue Act, in which it is provided that the proceeds of the sales of the bonds issued under that Act (if the Act be adopted) shall first be applied to the construction of such portions of routes 1 to 46 of the Act of 1917 which remain unconstructed. It appears on the face of the petition herein that all of said forty-six routes have not been built. Mandamus will not lie to compel respondents to give to a portion of any one route priority over other portions of other

routes and compel respondents to proceed with the improvement of any particular route.

It is alleged in the bill that the Meridian Trail extends, and has for more than six years last past extended, from a point near Beloit, Wisconsin, in a general southerly direction to Cairo, affording Rockford, Mendota, La Salle, El Paso, Bloomington, Clinton, Decatur, Pana, Vandalia, Centralia, Duquoin, Carbondale, Anna, Cairo, and the intervening communities reasonable connections with each other; that it was the legislative intention that said Route 2 for said hard-surfaced road should commence at the Illinois State Line near Beloit, Wisconsin, on the said Meridian Trail and follow said Meridian Trail to Cairo, Illinois, except so far only as it might be necessary to depart from said trail for the purpose of connecting the Cities of Oregon, Dixon, and Peru with the other cities and intervening communities along the route of said Meridian Trail.

Much of appellant's argument is based on this assumption of legislative intent. The intention of the Legislature is to be derived only from the language of the Act itself and its nature and object as the same is expressed in words by the Legislative Act. (*Blattner v. Dietz,* 311 Ill. 445.) In *Culver v. Waters,* 248 Ill. 163, it is said: ''The intent of the Legislature is to be found in the ordinary meaning of the words of the statute.'' The Meridian Trail is not mentioned in the statute and this together with the fact that three of the cities named in the route are shown by the petition not to be on the Meridian Trail is sufficient evidence that it was not the intent of the Legislature that the route in question should follow the Meridian Trail or any other trail. Had such been their intention they could easily have expressed that intention in words. On the contrary they named certain termini and delegated the power to the Department of Public Works and Buildings to determine,

with the approval of the governor, the exact highway between the termini upon which the road is to be constructed. (*Mitchell v. Lowden, supra.*)

It is assumed by appellants in their argument that respondents changed Route 2, between the cities of Decatur and Bloomington. This they did not do. What the facts set up in the petition show is that respondents determined, as required by law, the exact highway between the termini upon which the road is to be constructed. The Village of Wapella is not named in the Act and the petition shows that while Clinton is on a direct north and south line between Bloomington and Decatur, Wapella is not on such line, but lies a short distance east thereof.

The bill alleges that respondents have selected the location of Route 2 between Bloomington and Decatur. The prayer of the bill is that a writ of mandamus may issue directed against the Department of Public Works and Buildings, Cornelius N. Miller, as Director of the Department of Public Works and Buildings, and Frank P. Sheets, as Superintendent of Highways of the State of Illinois, commanding them severally to locate and construct a durable hard-surfaced road upon the public highway between the Village of Wapella and the City of Clinton, so as to afford the said City and Village reasonable connections with each other, in accordance with the provisions of the aforesaid Act of the General Assembly in so far as the same applies to route No. 2; and over that portion of the road between and through the said Village of Wapella to the said City of Clinton, and for a distance of one mile south of said City of Clinton. By this prayer they are asking the court to review the official, discretionary acts of respondents.

In *People v. Van Cleave*, 183 Ill. 330, it is said: "The general rule is, that *mandamus* will not lie to compel a public officer to do an act in the performance of which he is clothed with the exercise of dis-

cretionary power. There is an exception to this general rule, where it sufficiently appears that the refusal to act is arbitrary, or from a motive to accomplish his own personal or selfish ends,—in other words, where there is a palpable abuse of his discretion.'' The rule is that a public officer may be guilty of so gross an abuse of discretion or such an evasion of positive duty as to amount to a virtual refusal to perform the duty enjoined or to act at all in contemplation of law, and it is in such cases that the discretionary act of the officer is subject to review. (*People v. Healy,* 230 Ill. 280; *Illinois State Board of Dental Examiners v. People,* 123 Ill. 227; 18 R. C. L. 30.)

The petition in such case must contain such statements of facts, and not conclusions, as to show that the official has been guilty of such abuse of discretion. Simply alleging that the official acted arbitrarily or unreasonably, or was guilty of an abuse of discretion, is not sufficient. These statements are mere conclusions of the pleader and are not admitted by demurrer. Where the facts alleged in the bill or petition do not necessarily amount to such an abuse of discretion a demurrer is properly sustained. (*Sterling Gas Co. v. Higby,* 134 Ill. 557; *State v. Illinois Cent. R. Co.,* 246 Ill. 188.

Where conclusions of the pleader are stated and specific facts are stated in the petition, inconsistent therewith, the truth of the conclusions is not admitted by demurrer. (*Price v. Solberg,* 269 Ill. 459.) It is alleged in the petition that approximately one and one-quarter miles of said proposed Route 2 runs over territory where there is not now and never has been any public highway and that it is contemplated by said Act that said hard-surfaced road shall, as far as possible, be constructed upon the then and now existing highways connecting the cities named. This action is strongly urged as one of the grounds for the

issuance of the writ. That it is not the legislative intent that said hard-surfaced roads should be built in their entirety upon now existing highways is manifested by the fact that section 11 [Cahill's Ill. St. ch. 121, ¶ 193] of the Act in question provides that whenever the making of any part of said proposed improvement or the locating of a route or any part thereof will require that private property be taken the Department of Public Works and Buildings shall have the right to purchase the necessary land from the owner thereof or if compensation cannot be agreed upon, to acquire the property by the exercise of the right of eminent domain. By Cahill's Ill. St. ch. 121, ¶ 207, it is provided that the department of Public Works and Buildings is vested with the right to acquire any land, rights or other property necessary for the construction, repair or maintenance of State highways or necessary for the relocating, widening or straightening of any State highway by the exercise of the right of eminent domain.

It is evident therefore that the mere allegation that such portions of the road run over territory which is not now or never has been a public highway is not an allegation which even tends to show an abuse of discretion, but on the contrary it is evident from the petition that in so doing respondents were acting in strict accordance with the law, as in each instance the portion of the route not now a highway taken with the portions of the route both north and south thereof make one straight, continuous route running due north and south on a direct line between the termini, Bloomington and Clinton. The petition alleges that Bloomington is due north of Clinton.

It is alleged in the petition that by the location of said hard-surfaced road along the propose route certain landowners along said proposed route are favored to the great injury and damage of the People of the State of Illinois and the taxpayers of said State.

This allegation is a mere conclusion and no facts are stated as its basis. The location of a route will naturally and legitimately favor the adjoining landowners and this allegation constitutes no ground for the issuance of a mandamus.

It is alleged in the petition that the Village of Wapella is situated about five miles practically due north of the City of Clinton; that the said citizens of Bloomington, Clinton and Decatur, and the Villages of Wapella and Heyworth are connected with a direct line of steam railroad through the medium of the Illinois Central Railroad, and connected with a direct line of electric railway through the means of the Illinois Traction System, and are connected with a direct line of highways known as the Meridian Trail, and that said cities and said villages have been so connected by means of steam, electric and public highway for a period of more than 10 years last past.

It is further alleged that the said lines of the Illinois Central and the Illinois Traction System parallel each other with their rights of way adjoining each other, the entire distance from the northern boundary line of the City of Clinton to the Village of Wapella, and that the said Meridian Trail passes through the east portion of the Village of Wapella and from Wapella to Clinton is about one-quarter of a mile east of and parallels the said lines of steam railway and electric railway above mentioned, and runs practically due north and south, to a point about one and one-half miles north of the said City of Clinton, at which point the said highway crosses the said lines of railway; that the Village of Heyworth is on the route of said Meridian Trail, said Illinois Central Railroad, and Illinois Traction System, and is about five (5) miles north of the Village of Wapella, and between Wapella and Bloomington, and the said Meridian Trail is the only direct highway from Wapella to Heyworth; that said highway from Wapella to Heyworth

runs through a prairie country with highly developed farms bordering upon said trail, and also through a thickly settled farming community, but that said Department of Public Works have located said route No. 2 from said Heyworth to said line west of Wapella at a different location from said Meridian Trail; that the Meridian Trail from the said Village of Heyworth to the Village of Wapella runs the entire distance east of the right of way of the Illinois Central Railroad Company and Illinois Traction System, that said hard-surfaced road proposed to be constructed by said Department of Public Works from said Heyworth to and along said line southwest of said Wapella as so proposed to be located by said Department of Public Works runs said entire distance west of the right of way of said Illinois Central Railroad Company, as well as the right of way of Illinois Traction System.

But two routes from Heyworth to Clinton are set up in the petition, the proposed route and the Meridian Trail. The petition does not pray for a relocation of the road from Heyworth to Clinton, but only that portion of it between Wapella and Clinton, so that even if the respondents were required to relocate the route, the route so relocated between Clinton and Wapella must necessarily start at the point on the route which is alleged to be one-half mile west of Wapella and which the petition alleges is more than a mile west of the Meridian Trail. To reach the Meridian Trail from this point it would be necessary therefore to lengthen the road at least a mile to the east and cross at least two railroad tracks. The nature and character of these crossings are not set up in the petition and so, therefore, on hearing of the demurrer, must be presumed to be grade crossings, as likewise the crossings near Clinton, where the Meridian Trail crosses to the west of the railroad, as set out in the petition, and the one on Center Street in Clinton. The proposed route is described in the peti-

tion only from the county line which is four and three-quarters miles northwest of Wapella. The description is given as running between certain sections and when a diagram is made of these descriptions it is found that from said point on the county line to Clinton the proposed route runs straight south with only one jog of a few rods, where the existing highway jogs and another of about one-quarter mile. It is evident, therefore, that the proposed route is more than two miles shorter than going through Wapella and by way of the Meridian Trail and that five grade crossings are avoided.

It is alleged in the petition that to build the proposed route would cost at least $200,000 more than to go by the Meridian Trail. No facts are stated upon which this is based, but it is based on a general allegation as to cuts and fills, but it does appear that at the point where the proposed route crosses the I. C. R. R. tracks in Clinton it is to go by subway or elevated tracks, either of which crossings is expensive, but the expense falls on the Railroad Company and not on the public. It is a matter of common knowledge that all modern road subways and railroad companies are avoiding, so far as possible, grade crossings and we are not prepared to say that the avoidance of five grade crossings at an expense of $200,000 is not money well expended.

The petition alleges that it is the duty of the Department of Public Works, on laying out the route for said proposed hard-surfaced road to adopt a route that will give the Village of Wapella and the City of Clinton reasonable connections with each other, but that the said defendants have, although requested so to do, wholly failed and refused to adopt such route for said hard-surfaced road and yet persist in such refusal.

As before stated, the Village of Wapella is not on a direct line between Bloomington and Clinton and is

not named in the Act. It is a village of about six hundred inhabitants and the Meridian Trail, which is described as being in excellent condition, is not taken away. We cannot' say that the proposed route,' which is within one-half mile of Wapella, does not give the inhabitants of Wapella and Clinton reasonable connections with each other, especially in view of the fact that the only other possible route is fraught with such great danger by reason of the many grade crossings.

It is alleged in the petition, "that the said Department of Public Works and Buildings of the State of Illinois is about to construct a hard-surfaced road between the cities of Bloomington and Decatur, Illinois, over a portion of said Route No. 2, as hereinabove mentioned, arbitrarily and without any good and sufficient reason therefor, and contrary to and in utter disregard of the provisions and requirements of the said Act of the General Assembly, and the different sections of said Act, and in absolute disregard of the spirit of the statute, the said Department of Public Works and Buildings has had surveyed, or has caused to be surveyed, a road through the County of De Witt and State of Illinois, different from that provided by the terms of said Act of the General Assembly, and is now attempting to procure and have procured rights of way for the same, for the purpose of constructing said hard-surfaced road, and that the construction of said hard-surfaced road is now contemplated and about to be undertaken is contrary to the provisions as well as to the intent and spirit of 'the said Act of the General Assembly." These allegations are all conclusions, they are not admitted by the demurrer and are inconsistent with the specific facts alleged in the petition.

Other complaints of like character are found in the petition, but an analysis of each one of them shows them to fall far short of the allegations hereinbefore

shown to be necessary in a petition of this character. There is no allegation in the petition that respondents did not fully inspect, investigate and consider fully the advantages and disadvantages of these two routes, nor that petitioners were not given full and free opportunity to be heard before the decision was made. Every public official is presumed to have done his duty until the contrary is made to appear. No facts are stated in the petition which clearly show that the selection of the route in question was not the result of the honest judgment of respondents after mature deliberation. The demurrer was therefore properly sustained.